## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BURGERFI INTERNATIONAL INC., *et al.*,[1]<br><br>     Debtors. | Chapter 11<br><br>Case No. 24-12017 (CTG)<br><br>(Jointly Administered)<br><br>**Objection Deadline:**<br>**August 12, 2025, at 4:00 p.m. (ET)**<br><br>**Hearing Date:**<br>**August 19, 2025, at 10:00 a.m. (ET)**<br><br>**Re: D.I. 1365** |

### MOTION OF LIQUIDATING TRUSTEE FOR
### CLARIFICATION REGARDING SECOND AMENDED COMBINED
### DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF LIQUIDATION

The liquidating trust in the above-captioned chapter 11 cases, by and through its undersigned counsel and Daniel F. Dooley, as liquidating trustee (the "Liquidating Trustee"), respectfully moves this Court (the "Motion") for entry of an order, clarifying the *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* (D.I. 1365-1) (the "Plan").[2]

### PRELIMINARY STATEMENT

1. The Liquidating Trustee's principal goal is to administer the Liquidating Trust for the benefit of its beneficiaries and make distributions to Holders of Allowed Claims in accordance with the Plan and the Liquidating Trust Agreement. A dispute has arisen between the

---

[1] The last four digits of the tax identification number of BurgerFi International, Inc. and of Anthony's Pizza Holding Company, LLC are 8815 and 4718, respectively. A list of all Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, is available at https://cases.stretto.com/BFI. The Liquidating Trust's mailing address is: MorrisAnderson & Associates, Ltd, Attn: Daniel F. Dooley, 55 West Monroe Street, Suite 2350, Chicago, Illinois 60603.

[2] Undefined terms used herein shall have the meanings ascribed to them in the Plan.

Liquidating Trustee and TREW, the Debtors' prepetition secured lender and DIP lender, regarding TREW's asserted entitlement to the immediate Distribution of certain unearned insurance premiums and approximately $120,000 of remaining cash in the Debtors' bank accounts.  As set forth in greater detail below, the Liquidating Trust does not believe that TREW's demand for payment comports with the terms of the Plan, Sale Order or Final DIP Order.  In particular, the terms of the Plan require, before any Distribution is made to TREW, that the Liquidating Trust (i) reserve for or pay the fees and expenses of the Liquidating Trust, (ii) reserve for administrative expense and priority unsecured claims, and (iii) make Distributions in the aggregate amount of $350,000 to other classes of creditors.  Although the Liquidating Trustee and TREW tried to reach an agreement on the interpretation of the terms of the Plan, the parties are at an impasse.  Therefore, to ensure the Liquidating Trustee fulfills his duties in compliance with the Plan and Liquidating Trust Agreement, the Liquidating Trustee files this Motion for a ruling from the Court.

## RELIEF REQUESTED

2.    By this Motion, in accordance with sections 105(a) Bankruptcy Code and the Court's inherent authority to interpret and enforce its own orders, the Liquidating Trustee requests entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), clarifying whether (a) TREW is entitled to immediate Distributions of the Unearned Premiums (defined below) and Remaining Cash (defined below) or (b) such Distributions are subject to any of the following: (i) payment of or reservation for all Liquidating Trust Expenses; (ii) the payment of or reservation for administrative expense and priority unsecured claims; and (iii) Distributions in the aggregate amount of $350,000 to Holders of Claims in Classes 4, 5, and 6.

**JURISDICTION AND VENUE**

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these chapter 11 cases and this Motion pursuant to 28 U.S.C. §§ 157(b)(1) and (2) and 1334(b), the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012 (the "Amended Standing Order") and paragraph 33 of the *Findings of Fact, Conclusions of Law and Order Confirming Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* (D.I. 1365) (the "Confirmation Order").  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

4.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**RELEVANT FACTS**

**I.      General Background**

5.      On September 11, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors were authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On September 27, 2024, the Office of the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "Committee").

7.      On March 12, 2025, the Court entered the Confirmation Order confirming the Plan in these Chapter 11 Cases.  The Plan became effective on March 17, 2025 (the "Effective Date").

8.    The Plan incorporates the terms of a settlement between the Committee and TREW as set forth in the Plan. The Plan further provided for the creation of the Liquidating Trust (the "Liquidating Trust") to administer the remaining assets of the Debtors and make distributions to Holders of Allowed Claims.  Pursuant to Section 9.2 of the Plan and the Liquidation Trust Agreement attached to the Plan Supplement as Exhibit A (D.I. 1306-1), the Committee and TREW selected Daniel F. Dooley to serve as the Liquidating Trustee after the Effective Date.

9.    Among other responsibilities, the Liquidating Trust is tasked with (i) reviewing, reconciling, and resolving all Claims; (ii) prosecuting, settling, and resolving Retained Causes of Action and certain claims and causes of action assigned by TREW to the Liquidating Trust; (iii) administering the Liquidating Trust Assets; and (iv) making distributions to Holders of Allowed Claims.

10.    As previously noted, while carrying out his duties under the Plan, the Liquidating Trustee learned from Lockton Companies LLC, the Debtors' insurance broker, that the Estates are entitled to recover $884,216.15 for unearned premiums paid by the Debtors in connection with their insurance policies (the "Unearned Premiums").  TREW has requested an immediate Distribution of the Unearned Premiums on account of the Class 3 TREW Claims.

11.    In addition, the Debtors' remaining bank account is holding approximately $120,000 (the "Remaining Cash").  Upon information and belief, the Remaining Cash constitutes funds that were not spent pursuant to the budget attached to the *Notice of Updated Budget* (D.I. 873) (the "Budget").  Pursuant to notice of the Budget, the Budget "constitutes the Budget, or DIP Budget, as such terms are used in the Final DIP Order, and reflects the consensual use of cash collateral as agreed by TREW, in its capacity as the DIP Lender, as the prepetition senior secured lender, and as the winning bidder of the Debtors' asset sales under the Sale Orders."

Although the notice contemplates that the Remaining Cash could constitute TREW's collateral as DIP Lender, the orders of the Court approving the sales of the Debtors' assets are clear that the Debtors' obligations under the DIP Facility were paid in full: "Upon the Closing, the credit bid portion of the Purchase Price (if any) shall be deemed to pay down the Debtors' obligations under the DIP Agreement (as defined in the Sale Motion) ***in full***, and the balance of such credit bid shall be deemed to pay down the prepetition secured claim of the DIP Lender."  D.I. 310 at ¶ 9; D.I. 311 at ¶ 9 (emphasis added).  This is further reflected in the Plan, which provides: "The ACFP Sale and the BFI Sale, ***which resolved the Debtors' outstanding liabilities under the DIP Facility*** and substantially reduced the TREW Claims under the Senior Credit Facility, both closed pursuant to a transition services agreement and designation rights period."  Plan, § 3.5(d) (emphasis added). As a result, the provisions of the Final DIP Order (D.I. 190) no longer have force or effect.  *See* Final DIP Order, ¶ 45.

12.     TREW has provided invoices to the trust for legal fees for its professionals in the following amounts: (i) $143,502.38 for Lathrop, covering the period from November 1 to November 28, 2024; (ii) 45,934.50 for Pierson Ferdinand, covering the period from February 21 to May 31, 2025; and (iii) $7,257.00 for CM Law PLLC, covering the period from January 9 to January 22, 2025 (collectively, the "<u>DIP Lender Fees</u>").  Notwithstanding the express language of the Sale Orders and the Plan, and even though a substantial portion of the fees arise from the post-Effective Date period, TREW asserts that the DIP Lender Fees are DIP Obligations (as defined in the Final DIP Order) required to be paid from the Remaining Cash or otherwise by the Liquidating Trust as administrative expenses.

**II.      Treatment of Claims and Distributions Under the Plan**

13.      The Plan provides for the treatment of Claims and when Distributions to creditors, including TREW, on account of Allowed Claims may be made.  The following are the relevant provisions of the Plan governing Distributions to TREW, the treatment of administrative expense and priority unsecured claims, and the treatment of Liquidating Trust Expenses.

**(A)      Treatment of Administrative Expense and Priority Unsecured Claims**

14.      Generally, as set forth below, the Plan requires that administrative expense and priority unsecured claims be paid in full and that the Liquidating Trust must reserve for such Claims before making any Distributions.

15.      Section 5.1 provides that "each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement and release of such Claim, payment in full and in Cash of the unsatisfied amount of such Claim on the later of (i) the Effective Date; (ii) the due date of such Claim in accordance with its terms; or (iii) 7 days after such Claim becomes an Allowed Administrative Claim; *provided*, *however*, that any Holder of an Allowed Administrative Claim may agree to different treatment of such Claim." Plan, § 5.1.

16.      Section 5.2 provides that "each Holder of a Priority Tax Claim will receive, in full and final satisfaction, settlement and release of such Claim, payment in full and in Cash of the unsatisfied amount of such Claim on the later of (i) the Effective Date; (ii) the due date of such Claim in accordance with its terms; or (iii) 7 days after such Claim becomes Allowed." Plan, § 5.2.

17.      Section 6.3 provides that Holders of Priority Non-Tax Claims receive, "in full and final satisfaction, settlement and release of such Claim . . . payment in full and in Cash of the unsatisfied amount of such Claim." Plan, § 6.3.

18.     Section 10.4(a) of the Plan requires the Liquidating Trustee to establish a reserve for disputed administrative expense and priority Claims "prior to making any Distributions."  Plan, § 10.4(a).

**(B)     Treatment of TREW Claims**

19.     Section 6.4 of the Plan describes the treatment of TREW Claims, which are Class 3 Claims under the Plan.  Crucially, although section 6.4 of the Plan sets forth different treatment for TREW's secured claims and unsecured claims as prepetition lender, "TREW Claims" are defined to mean "all Claims of TREW against any Debtor under or relating to the Senior Credit Facility; *provided*, *however*, that TREW Claims do not include any Claims under the DIP Order." Plan, Exhibit A, § 132.  Therefore, TREW Claims include both TREW's secured claims as prepetition lender and its general unsecured Deficiency Claim; there are not separate classifications of TREW's secured and unsecured claims.  The Plan allows Class 3 TREW Claims in the aggregate amount of $9,986,061.  Plan, § 6.4.

20.     The Plan does not provide for a recovery, payment or Distribution on account of Claims under the Final DIP Order.

21.     Section 6.4(b)(i) provides the following with respect to Distributions on account of TREW's secured claims:

> (i)     From the Effective Date and until the TREW Claims are satisfied in full, TREW shall receive in Cash the full amount of the proceeds, net of selling costs, of any disposition of any TREW Collateral.  At TREW's election, the Liquidating Trustee shall promptly transfer all or any TREW Collateral to TREW or as directed by TREW, with any related costs or taxes to be borne by TREW, with the fair value of such transfer to be deemed a satisfaction and release of the TREW Claims in such amount.  Without limiting the foregoing, on account of the TREW Claims:

> 1. On the Effective Date, all cash held by the Debtors (excluding the TREW Cash Contribution) after payment of or reserve for Allowed Administrative Claims, Priority Tax Claims, or Priority Non-Tax Claims shall be paid to TREW; and
>
> 2. If recovered by the Debtors or the Liquidating Trust, all adequate assurance deposits previously provided by the Debtors to any utility, or held by the Debtors for the benefit of any utility, and all refunds or returns of unearned premiums on insurance policies that have been canceled, rejected or terminated by the Debtors, shall be paid to TREW.

Plan, § 6.4(b)(i).

22.     Section 6.4(b)(ii) provides the following with respect to Distributions on account of TREW's Deficiency Claim:

> TREW shall receive, in full and final satisfaction, settlement and release of its Deficiency Claim, a Pro Rata share of all Liquidating Trust Assets, with all Distributions thereon to be made in accordance with the provisions of the Plan and the Liquidating Trust Agreement. Notwithstanding anything to the contrary herein or in the Liquidating Trust Agreement, all Distributions to TREW on account of its Deficiency Claim shall be subject to the Waterfall.

Plan, § 6.4(b)(ii).

23.     Section 10.3 of the Plan, entitled "Distribution Waterfall," provides for the allocation of Distributions and states, in part:

> ***Notwithstanding anything to the contrary herein***, ***all Distributions on account of Allowed Claims in Class 3 (TREW Claims)*** . . . shall be subject to the following allocation":
>
> (a) The Liquidating Trust shall not make ***any*** Distributions of Cash to TREW on account of Class 3 Claims (TREW Claims) unless and until $350,000 of Distributions (the "Initial Distribution") in the aggregate has been made on account of Allowed Claims across" Classes 4, 5 and 6 . . . .

Plan, § 10.3 (emphasis added); *see also id.*, at § 3.5(b) (stating that the Plan incorporates the "agreement by TREW to defer recoveries on its Claims in accordance with the Waterfall"); *id.*, at

8

§ 13.7 (providing that TREW is "agreeing to defer Distributions on the TREW Claims in accordance with the Waterfall").

**(C)        Reserve for Liquidating Trust Expenses**

24.        Section 9.1(f) of the Plan requires the Trust to pay or reserve for Liquidating Trust Expenses before any Distributions are made under the Plan:

> From and after the Effective Date, the Liquidating Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the Liquidating Trust Expenses.  The Liquidating Trust Expenses shall be payable solely from Liquidating Trust Assets in accordance with the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee may, but shall not be obligated to, physically segregate and maintain separate accounts or sub-accounts for Liquidating Trust Expenses.  Reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine reserves and amounts to be paid to Holders of Allowed Claims.  ***For the avoidance of doubt, the Liquidating Trust shall pay or reserve for all Liquidating Trust Expenses before a Distribution may be made from Liquidating Trust Assets.***

Plan, § 9.1(f) (emphasis added).

## BASIS FOR RELIEF

25.        It is well established that bankruptcy courts have the inherent authority to construe and enforce confirmed plans.  *See In re JAB Energy Sols. II, LLC*, 2025 WL 1937083, at *3 (3d Cir. 2025) (holding that a bankruptcy court was an appropriate forum to "construe and enforce provisions of the [p]lan") (internal citation omitted); *In re JAB Energy Sols. II, LLC*, 663 B.R. 632, 637 (D. Del. 2024) (reversed in part on other grounds) ("Bankruptcy courts frequently rule on motions to interpret or enforce confirmed plans/orders. . . ."); *In re Mallinckrodt PLC*, 2023 WL 3009883, at *4 (Bankr. D. Del. Apr. 19, 2023) (interpreting post-confirmation plan); *In re Filene's Basement, LLC*, 621 B.R. 94, 97 (Bankr. D. Del. 2020) (same). A bankruptcy plan "acts as a binding contract on the parties" and must be interpreted in conformance with "principles of contract interpretation," including choice of law provisions. *JAB Energy Sols. II, LLC*, 663 B.R. at 640. The Plan is governed by Delaware law. Plan, § 16.6.

26.     Further, through the Confirmation Order, the Court retained "jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases, the Plan, and the Liquidating Trust from and after the Effective Date to the fullest extent that is legally permissible and provided for in the Plan."  Confirmation Order, ¶ 33.

27.     Based on the foregoing, the Liquidating Trust does not believe that TREW is entitled to immediate Distributions of the Unearned Premiums or the Remaining Cash.  ***First***, section 6.4 of the Plan is express that any Distribution of the Unearned Premiums to TREW is on account of Class 3 TREW Claims, which includes both TREW's secured and unsecured claims. As a result, such Distribution is subject to the Waterfall provision of section 10.3 of the Plan, which expressly requires that $350,000 of Distributions must first be made to Holders of Claims in Classes 4, 5 and 6 before any Distribution is made to TREW on account of Class 3 TREW Claims "notwithstanding anything to the contrary herein."  Plan, § 10.3.  Moreover, as described above, sections 9.1(f) and 10.4 require the Trust to pay or establish reserves for unpaid administrative expense claims, priority unsecured claims and Liquidating Trust Expenses prior to making ***any*** Distributions to TREW.[3]

28.     ***Second***, TREW is not entitled to an immediate Distribution of the Remaining Cash.  In addition to the provisions applicable to the Unearned Premium described above—all of which apply equally to the Remaining Cash—section 6.4(b)(i) of the Plan specifically provides that TREW is not entitled to the Remaining Cash until payment of or

---

[3]    Section 6.4(b) does provide that TREW may elect for the Trust to "promptly transfer all or any TREW Collateral to TREW or as directed by TREW, with any related costs or taxes to be borne by TREW, with the fair value of such transfer to be deemed a satisfaction and release of the TREW Claims in such amount."  To the extent the Court finds that this language conflicts with the other provisions of the Plan, because section 10.3 of the Plan governs Distributions to TREW on account of the TREW Claims "notwithstanding anything to the contrary [in the Plan]" and the Plan expressly requires the creation of the reserves for administrative expense claims, priority claims and Liquidating Trust Expenses, the Liquidating Trust believes that the best reading of the Plan that gives meaning to all of its provisions is that TREW may only make such election once the aforementioned prerequisites are satisfied.

reservation for allowed administrative expense and priority claims: "On the Effective Date, all cash held by the Debtors (excluding the TREW Cash Contribution) *after payment of or reserve for Allowed Administrative Claims, Priority Tax Claims, or Priority Non-Tax Claims* shall be paid to TREW."  Plan, § 6.4(b)(i)(1) (emphasis added).

29.     Any assertion by TREW that it is entitled to the Remaining Cash on account of claims as DIP lender, including the DIP Lender Fees, is belied by the terms of the Plan, Final DIP Order and Sale Orders.  As an initial matter, such assertion directly conflicts with section 6.4(b)(i)(1) of the Plan described above. Moreover, the Plan does not provide for any Distribution to TREW on account of any purported DIP obligations of the Debtors.  That is consistent with the express language in the Sale Orders and the Plan that provides that the sales satisfied the Debtors' obligations under the DIP "*in full*." D.I. 310 at ¶ 9; D.I. 311 at ¶ 9 (emphasis added).  As a result, the terms of the Final DIP Order are no longer in force or effect.  Final DIP Order, ¶ 45.[4] Therefore, TREW is not entitled to any Distribution under the Plan as the Debtors' former DIP lender, including for the DIP Lender Fees.

## NOTICE

30.     Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to TREW; and (iii) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The Liquidating Trustee submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Liquidating Trustee respectfully requests that the Court enter an order substantially in the form of the Proposed Order attached hereto as **Exhibit A**, clarifying

---

[4]     Further, a substantial portion of TREW's asserted fees as DIP lender arise from the post-Effective Date period. To require payment of such fees as DIP Obligations could indicate that the Liquidating Trust is required to pay TREW's attorneys' fees in perpetuity and would be unreasonable and inequitable interpretation of the Final DIP Order.

the distribution scheme, including the applicability of the Waterfall and any conditions precedent,

as they relate to TREW and its request for an immediate distribution of the Premium Credit under

the Plan.

Dated:  August 5, 2025
      Wilmington, Delaware

            MORRIS, NICHOLS ARSHT & TUNNELL LLP

            */s/ Luke Brzozowski*
            Derek C. Abbott (No. 3376)
            Matthew O. Talmo (No. 6333)
            Luke Brzozowski (No. 7377)
            1201 North Market Street
            P.O. Box 1347
            Wilmington, Delaware 19899-1347
            Telephone: (302) 658-9200
            Email: dabbott@morrisnichols.com
                   mtalmo@morrisnichols.com
                   lbrzozowski@morrisnichols.com

            - and -

            MCDONALD HOPKINS LLC
            Scott N. Opincar (admitted *pro hac vice*)
            Maria G. Carr (admitted *pro hac vice*)
            600 Superior Avenue, East
            Suite 2100
            Cleveland, OH  44114
            Telephone: (216) 348-5753
            Email: sopincar@mcdonaldhopkins.com
                   mcarr@mcdonaldhopkins.com

            *Counsel for Daniel F. Dooley, Liquidation Trustee*